FILED
2017 Sep-18 PM 02:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| CINDY ANN GAMBLE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case Number: 1:16-cv-01036-JHE |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Cindy Ann Gamble ("Gamble") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for disability insurance benefits ("DIB") and social security income ("SSI"). (Doc. 1). Gamble timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Gamble prospectively filed her application for DIB and SSI on June 4, 2013, alleging she became unable to work beginning December 1, 2009, later amended to November 1, 2011. (Tr. 165-77). Gamble was forty-five years old on her alleged on set date and fifty years old when the ALJ rendered his decision. (Tr. 42, 225-26, 250). Gamble has a high school education and past

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 13).

relevant work as a cashier, newspaper deliverer, and home health aide. (Tr. 42, 225-26, 250). The Agency initially denied Gamble's application, and Gamble requested a hearing where she appeared. (Tr. 35-58, 63-98, 104-112). After the hearing, the Administrative Law Judge ("ALJ") denied Gamble's claim on January 20, 2015. (Tr. 11-29, 37-57). Gamble sought review by the Appeals Council, but it declined her request on April 27, 2016. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On June 24, 2016, Gamble initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

2

the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Gamble meets the insured status requirements of the Social Security Act through June 30, 2016, and that Gamble had not engaged in substantial gainful activity since her initial alleged onset date of December 1, 2009, although he noted some limited work activity up through 2011, with earnings substantially less than $1,000.00 per month. (Tr. 16). At Step Two, the ALJ found Gamble has the following severe impairments: generalized arthritis/polyarthropathy including degenerative changes of the hands and wrists, chronic obstructive pulmonary disease ("COPD"), mild-to-moderate degenerative joint disease of the spine, a history of ulnar tendinopathy and epicondylitis bilaterally, and a mood/depressive disorder. (Tr. 16-17). At Step Three, the ALJ found Gamble did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17-19).

Before proceeding to Step Four, the ALJ determined Gamble's residual functioning

4

capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Gamble had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except Gamble can lift and carry up to 20 pounds occasionally and 10 pounds frequently; she can stand or walk about 6 hours and can sit for at least 6 hours in an 8 hour workday; she can frequently stoop, crouch, kneel and climb ramps and stairs; she can occasionally crawl, but would be unable to climb ladders, ropes, or scaffolding; she can perform tasks not involving exposure to extremes of temperature or humidity or exposure to workplace hazards such as unprotected heights and dangerous moving machinery; she can perform tasks not involving concentrated exposure to pulmonary irritants such as dust, gases, fumes, or smoke; she can perform tasks not involving operation of vibrating tools or equipment; she can perform fine and gross manipulation on no more than an occasional basis; otherwise, she can understand and carry out short, simple instructions consistent with the performance of simple, unskilled work of a routine, repetitive nature; she can perform simple, work-related decision-making, but no complex planning, negotiation, or independent goal-setting; she can tolerate only minor, infrequent changes within the workplace. (Tr. 19-28).

At Step Four, the ALJ determined Gamble is unable to perform any past relevant work. (Tr. 27). At Step Five, the ALJ determined, based on Gamble's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Gamble could perform. (Tr. 29-29). Therefore, the ALJ determined Gamble has not been under a disability and denied her claim. (Tr. 29).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve

5

the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Gamble failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Gamble challenges the Commissioner's decision on two specific grounds, contending: (1) the ALJ erred when he improperly relied on the testimony of the vocational expert ("VE"); and (2) the ALJ erred when he gave little weight to the opinion of Gamble's treating physician, Dr. Stacy Towles-Moore.[4] (Doc. 9 at 7-14). Neither of these grounds supports reversal.

**A. Challenge to the ALJ's Reliance on the Vocational Expert's Testimony**

Gamble contends the ALJ failed to resolve an inconsistency in the record as to one of the jobs the VE testified did not meet the ALJ's hypothetical limitations. (Doc. 9 at 7-8). Specifically, Gamble points to the "Bakery Conveyor Worker" job and argues the ALJ should not have relied on the VE's testimony that Gamble could perform this job because it requires "significant handling," which is prohibited by the ALJ's hypothetical question and Gamble's RFC. (*Id.* at 8).

At Step Five of the sequential evaluation to determine whether Gamble was disabled, the

---

[4] To the extent Gamble makes a one sentence, cursory statement about it being contradictory for the ALJ to give more weight to the opinions of the consultative examiner and State agency expert than Dr. Towles-Moore (doc. 9 at 12-13), such is insufficient to be considered a properly raised argument. Gamble has waived this issue. Moreover, the State agency consultant and consultative examiner only provided opinions on Gamble's mental limitations, not any physical limitations. (Tr. 70-72, 467-70). Gamble makes no argument as to how the ALJ giving substantial weight to opinions about her mental limitations would be contradictory to giving partial weight to an opinion about her physical limitations.

ALJ obtained testimony from the VE. (Tr. 50-57). The ALJ presented the VE with a hypothetical question asking whether an individual of Gamble's age, education, and past work experience, with Gamble's RFC could perform other work in the national economy. (Tr. 53). The VE testified there would be jobs Gamble could perform, such as Counter Clerk (1,000 jobs in Alabama and 108,000 nationally), Bakery Conveyor Worker (700 jobs in Alabama and 135,000 nationally), and Lobby Attendant (600 jobs in Alabama and 83,000 nationally). (Tr. 53-54).

Gamble's RFC, which she expressly does not challenge for this purpose, (doc. 9 at 7), includes a limitation that she can occasionally perform fine and gross motor manipulation, which relates to handling and fingering. (Tr. 19, 53-53). The Bakery Conveyor Worker job description in the Dictionary of Occupational Titles ("DOT") mentions "significant" handling; however, it also shows "handling" is required "Occasionally – Exists up to 1/3 of the time" and "fingering" is "Not present – Activity or condition does not exist. *DOT*, No. 524.687-002, 1991 WL 674401. This requirement of no more than occasional handling and fingering is consistent with the ALJ's hypothetical, which included the RFC's limitation to occasional fine and gross manipulation. (Tr. 19, 53-54).

Additionally, the VE testified, and the ALJ found, Gamble could perform two other jobs that met the given hypothetical, which matches Gamble's RFC.[5] (Tr. 29, 53-54). For example, the Counter Clerk job, *DOT*, No. 249.366-010, 1991 WL 672323, describes handling and fingering requirements as "Occasionally – Exists up to 1/3 of the time." *Id.* Therefore, the DOT description is consistent with the hypothetical and Gamble's RFC. With 1,000 regional jobs and 108,000 national jobs, Gamble's ability to perform in the position of Counter Clerk alone provides substantial evidence to support the ALJ's Step Five finding. *See Brooks v. Barnhart*, 133 F. Appx.

---

[5] Gamble makes no specific arguments as to these two jobs. (Doc. 9 at 7-9).

669, 671 (11th Cir. 2005) (holding that substantial evidence supported the ALJ's finding that 840 jobs constituted a signification number in the national economy); *see also* 20 C.F.R. §§ 404.1566(b), 416.966(b) (explaining "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications").

Accordingly, the ALJ did not err when he relied on the VE's testimony, and there is substantial evidence to support the ALJ's Step Five findings.

### B. Weight Given to Treating Physician Dr. Stacy Towles-Moore's Opinion

Gamble contends the Commissioner's decision is erroneous because too little weight was given to the opinion of Dr. Stacy Towles-Moore, a treating physician. (Doc. 9 at 9-14). Gamble argues the ALJ's decision is based largely on the "fallacious assumption" there was no current examination by Dr. Towles-Moore and further points to a treatment note from March 3, 2014, (tr. 540-45), which was submitted to the Appeals Counsel after the ALJ rendered his decision. (*Id.* at 9-12).

#### 1. Evidence Presented to the ALJ

As to the evidence from Dr. Towles-Moore, on July 7, 2014, Dr. Towles-Moore completed a check-the-box physical assessment form provided by Gamble's counsel. (Tr. 536). Dr. Towles-Moore opined Gamble had limitations including that she should not perform any work at all, would miss at least five days per month, could not lift ten pounds, and could not stand or walk for more than two hours per day. (Tr. 536-37). She also opined Gamble could occasionally use her bilateral upper extremities for fine and gross manipulation. (Tr. 538).

The weight accorded a doctor's opinion depends on the doctor's examining and treating relationship with the claimant, how consistent the opinion is with the record as a whole, the

8

doctor's specialty, and other factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, a treating doctor's opinion is entitled to more weight, and an ALJ must give good reasons for discounting a treating doctor's opinion. *See* 20 C.F.R. §§ 404.1527(c)(2), 404.927(c)(2); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An ALJ may discount a doctor's opinion, including a treating doctor's opinion, when the doctor fails to provide objective medical evidence to support his or her opinion or if the doctor's opinion is inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Moreover, opinions on some issues, such as the claimant's RFC and whether the claimant is "disabled" or "unable to work," "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d); Social Security Ruling ("SSR") 95-5p, 1996 WL 374193 (1996).

The ALJ considered Dr. Towles-Moore's July 2014 opinion and explained that "[a]fter full review, and after comparing the opinion form with the record generally, [he was] unable to afford more than partial weight to [the] opinion." (Tr. 25). The ALJ weight given to the opinion was somewhat diminished by the lack of supporting records. (*Id.*). The ALJ explained there was no indication of any examination accompanying the opinion, and there was no reference to any particular medical note. (Tr. 25, 535-38). The ALJ further noted there was no accompanying explanation of the check marks on the form. (*Id.*). Indeed, the form contains no supporting medical findings or explanation of the opinions indicated on the form. (Tr. 536-38). To the contrary, the ALJ explained there was a lack of substantiation in the medical records for the restrictions noted on the form, particularly the restriction on standing, walking, and lifting, as well as on stooping, kneeling, crouching, crawling, and climbing ramps/stairs. (Tr. 25, 537).

9

The ALJ noted the medical records did not support significant knee or leg impairment (outside of a recent ankle injury that was considered non-severe based on duration), and the same could be said regarding Gamble's back impairment. (Tr. 25). The ALJ pointed out that the available medical records show no greater than mild-to-moderate degenerative joint disease of Gamble's knees and back. (Tr. 25). This conclusion is supported by the record. Prior to the amended onset date, a September 2011 left knee x-ray showed mild degenerative changes. (Tr. 425). An October 2011, MRI of the left knee showed some mild changes. (r. 328). The MRI revealed findings including "mild irregular increased signal intensity seen in the mid pole of the patella . . . with some decreased signal intensity." (*Id.*). The reviewing physician noted, "[p]atellar findings as described, suggesting bone marrow edema and possible chondromalacia" but stated clinical correlation was needed and no other significant findings of acute pathological process otherwise. (*Id.*).

After the amended alleged onset date, a November 2011 examination by Dr. Towles-Moore revealed left knee tenderness, as well as pain with motion, but full range of motion of the right knee. (Tr. 371). In March 2012, Gamble saw Dr. Towles-Moore, who noted Gamble had minimal swelling of the left knee and only a mild reduction in range of motion. (Tr. 383). In June 2012, Gamble returned to Dr. Towles-Moore and had no edema of the extremities. (Tr. 387). In July 2012, Gamble was examined at Salame Heart and Vascular Clinic. (Tr. 441). Her extremities appeared normal with no edema, and Gamble had full motor strength and coordination in her extremities. (Tr. 441). In May 2013, Gamble presented at Stringfellow Memorial Hospital for complaints of chest pain and shortness of breath. (Tr. 453). Musculoskeletal/back examination revealed normal range of motion of the back and normal spinal alignment. (*Id.*). Examination also revealed normal motor function and sensation, as well as intact range of motion for all

extremities. (Tr. 454). Neck examination revealed no pain with palpitation or motion and no limited range of motion. (Tr. 453). In November 2013, a cervical spine x-ray showed minor scoliosis and facet joint degenerative changes without any loss of disc space height or misalignment. (Tr. 521). A lumbosacral spine x-ray showed mild-to-moderate lower facet and mild sacroiliac sclerosis in the lumbar spine with a probability of mild-to-moderate disc space loss at L5-S1. (Tr. 522, 524). A thoracic spine x-ray showed minor kyphosis and osteophylic spurring with very minimal rotatory scoliosis. (Tr. 523). A left knee x-ray revealed minor degenerative changes. (Tr. 525). In July 2014, Gamble presented to the Crawford Clinic, and a physician noted Gamble had good range of motion of the knees. (Tr. 532).

As to the mild-to-moderate nature of Gamble's knee and back impairments, the ALJ stated he could not find Gamble would be unable to stand or walk or lift up to twenty pounds. (Tr. 25). He stated that, if there were more severe degeneration observed clinically or on medical imaging, he might be convinced for more significant restrictions, but there are no such records. (*Id.*). The ALJ explained that in other medical records, Gamble was noted as having full and unobstructed range of motion in her back and extremities. (Tr. 25, 453-54). Although presenting for chest pain in May 2013, the ALJ noted he found the candid findings in the course of emergency medical treatment somewhat more probative of the issue of Gamble's functional level, and they could hardly be construed as supporting the extreme limitations opined by Dr. Towles-Moore. (Tr. 25-026; *see* tr. 446-65).

The ALJ did find Dr. Towles-Moore's opinion that Gamble would be limited to occasional fine and gross manipulation warranted by the evidence of record. (Tr. 26). The ALJ summarized the evidence related to Gamble's wrist conditions and explained the limitations were warranted based upon the record, and he incorporated the limitations into Gamble's RFC. (Tr. 19, 26).

To the extent Gamble contends the ALJ substituted his opinion for that of the treating physician, that argument is meritless. The ALJ did not diagnose any conditions, provide treatment, or do anything ordinarily done by a doctor. The ALJ simply weighed Dr. Towles-Moore's opinion and explained why the medical evidence of record was inconsistent with the opined limitations. (Tr. 25). The ALJ properly performed his duties of weighing the medical evidence when determining Gamble's RFC. *See Langley v. Astrue*, 777 F. Supp. 2d 1250, 1252-61(N.D. Ala. 2011) (discussing why the assessment of a claimant's RFC is not a medical assessment and an ALJ is not required to rely on a doctor's opinion in assessing a claimant's RFC).

Furthermore, despite Gamble's assertion to the contrary, (doc. 9 at 13), the ALJ pointed to specific details in the medical record that were inconsistent with Dr. Towles-Moore's July 2014 opinion, including evidence showing only mild-to-moderate degenerative joint disease of the knees and back. (Tr. 25). Additionally, although Gamble presented to the hospital with complaints of chest pain in May 2013, there is no indication that anything short of a full physical examination was performed. (Tr. 453). Gamble's speculation concerning the focus of the examination (i.e., that she presented for chest pain and thus the examination must have focused on related issues only) does not undermine the findings, which included no pain with palpitation or movement and no limited range of motion of neck; normal back range of motion and normal spinal alignment; and intact range of motion in all extremities. (Tr. 454).

**2. March 3, 2014 Evidence Presented to the Appeals Council**

After the ALJ rendered his decision on January 20, 2015, Gamble submitted additional evidence – a treatment record from Dr. Towles-Moore dated March 3, 2014 – to the Appeals Council. (Tr. 540-45). The March 3, 2014 records show Gamble presented with complaints of back pain and depression, and reported being dismissed from pain management. (Tr. 541).

12

According to the records, cervical spine examination was normal, and a thoracic spine examination revealed muscle spasm, tenderness, and moderate pain with motion. (Tr. 543). Lumbar spine examination revealed muscle spasm, loss of curvature, and moderately reduced range of motion. (*Id.*). Bilateral shoulder examination was normal, including full-range of motion. (*Id.*). Dr. Towles-Moore assessed diagnoses including rheumatoid arthritis, benign hypertension, joint pain-multiple joints, chronic pain syndrome, sciatica, lumbago, and bone and cartilage-not otherwise specified. (Tr. 544).

When a claimant submits new and material evidence, the Appeals Council evaluates the entire record including the new and material evidence submitted if it is chronologically relevant (i.e., relates to the time period considered by the ALJ) to determine if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). Here, the Appeals Council considered the newly submitted March 3, 2014 treatment records, but found the information did not provide a basis for changing the ALJ's decision. (Tr. 2). A district court considers evidence submitted to the Appeals Council with the record as a whole to determine whether substantial evidence supports the ALJ's decision. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1266 (11th Cir. 2007).

Gamble argues the March 3, 2014 treatment notes show the ALJ improperly evaluated Dr. Towles-Moore's opinion, pointing to the ALJ's statement that "[t]here is no indication of any examination accompanying the opinion nor is there even a reference to any particular medical notes". (Doc. 9 at 10-13). Gamble contends this statement suggests that if the Commissioner had been given the March 3, 2014 treatment note, there was a "likelihood that the weight afforded [Dr. Towles-Moore's] opinion would have been greater." (Doc. 9 at 10). This argument is unpersuasive.

13

The March 3, 2014 treatment note does not undermine the substantial evidence supporting the ALJ's statement. Even considering this new record, there is no indication Dr. Towles-Moore examined Gamble when providing her 2014 opinion. (Tr. 536-38). The new evidence merely shows Dr. Towles-Moore examined Gamble four months earlier, and is not referenced in the later opinion. (Tr. 536-38, 541-45). To the contrary, the ALJ did note that Dr. Towles-Moore's opinion appeared not to be based on current treatment. (Tr. 25). Furthermore, the findings from the March 3, 2014 visit were similar to the findings the ALJ determined to be inconsistent with Dr. Towles-Moore's opinion and supportive of his RFC finding. (Tr. 29-17, 541-44).

The evidence submitted to the Appeals Council does not show the ALJ's decision is not supported by substantial evidence in the record. *See Ingram*, 496 F.3d at 1266. As the Commissioner points out, Gamble's Appeal Council argument is premised on the newly submitted evidence creating a *likelihood* that the ALJ improperly evaluated Dr. Towles-Moore's opinion, which alleged would render the decision erroneous. (Doc. 10 at 21 (citing doc. 9 at 10)). However, a *likelihood* that the ALJ did not properly evaluate an opinion does not show the ALJ's denial of benefits is not supported by substantial evidence in the record as a whole – and that is the standard on review. *See Hearns v. Comm'r Soc. Sec.*, 619 Fed. App. 892, 894 (11th Cir. 2015) ("To obtain a sentence four remand, the claimant must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole . . . . Hearn's brief falls far short of accomplishing this; the brief only suggest that the new submission 'could bear' on his condition during the relevant time period.").

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying

14

Gamble's claim for DIB and SSI is **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE**.

DONE this 18th day of September, 2017.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE